Alida RODRIGUEZ, Plaintiff, Appellant,

v.

SECRETARY OF HEALTH AND HU-
MAN SERVICES, Defendant,
Appellee.

No. 88–2183.

United States Court of Appeals,
First Circuit.

Submitted May 5, 1989.

Decided Oct. 24, 1989.

Salvador Medina De La Cruz, on brief, for plaintiff, appellant.

Daniel F. Lopez Romo, U.S. Atty., Jose F. Blanco, Asst. U.S. Atty., Hato Rey, P.R. and Amy S. Knopf, Asst. Regional Counsel, Dept. of Health & Human Services, on brief, for defendant, appellee.

Before BOWNES, BREYER and TORRUELLA, Circuit Judges.

PER CURIAM.

Claimant Alida Rodriguez filed an application for Social Security disability benefits on February 7, 1986, alleging cardiac and mental impairments. Claimant had been hospitalized for an aneurysm on August 21, 1985, and underwent surgery to clip the aneurysm on September 11, 1985. After a

hearing, the Administrative Law Judge (ALJ) found claimant not disabled at step 5 of the sequential evaluation process. 20 C.F.R. § 404.1520(f). Focusing on claimant's cardiac condition as an exertional impairment, the ALJ concluded that claimant had the residual functional capacity to perform sedentary work, so that application of Rule 201.23 of the Medical–Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the grid") dictated a finding of not disabled. The ALJ concluded that claimant's non-exertional impairments (a mental condition and dizziness due to cardiac medication) did not significantly affect her ability to perform the full range of jobs requiring sedentary work. The Appeals Council denied claimant's request for review, stating that the evidence justified a finding that claimant had recovered sufficiently within one year after her hospitalization and aneurysm surgery to be able to perform sedentary work. *See* 20 C.F.R. § 404.1505 (disability defined as "the inability to do any substantial gainful activity ... for a continuous period of not less than 12 months"). Claimant appealed to the district court, which affirmed. On appeal to this court, claimant contends that the Secretary's decision is not supported by substantial evidence. We affirm.

■ Claimant's primary contention on appeal is that the Secretary improperly disregarded testimony of Dr. Jorge Lugo, a non-examining medical advisor, to the effect that claimant required a full year to recover from her aneurysm surgery. Dr. Lugo did testify at the hearing that claimant, following her aneurysm surgery, "needed a period for recovery, a period of one year." When claimant's counsel asked, "Doctor from what you have said, could I conclude that ... this lady who suffered from that condition and was later operated on and received treatment needed in your opinion a year in order to recover and obtain again her work capacity," Dr. Lugo answered, "I would say yes." Claimant asserts that this testimony established that claimant was "disabled" within the meaning of 20 C.F.R. § 404.1505, i.e., unable to engage in any substantial gainful activity for a period of a year. The Secretary's

rejection of this testimony, according to claimant, was improper because there was no medical evidence to support that rejection.

In fact, however, as the Appeals Council stated, there was substantial medical evidence to support a finding that claimant had recovered from the aneurysm before August 21, 1986. For example, a treating neurologist, Dr. Manana, examined claimant in January 1986 and again in February 1986. Dr. Manana diagnosed cervical and dorsal myositis and vascular headache, and noted that claimant had undergone surgery for an aneurysm. Dr. Manana said nothing to suggest that the aneurysm would still preclude claimant from any work activity. Dr. Edwin Villafane, a consulting internist, examined claimant on June 5, 1986. He noted the aneurysm surgery and stated that claimant had osteoarthritis. However, he found claimant well-developed, well-hydrated, well-nourished, oriented in time, place and self, and using no support for walking. Although he found tenderness to palpation along paraspinal muscles and some limitation of movement of the spine, he found no limitation of neck or joint movement. Claimant's heart was stated to have regular rhythm, no murmur, and good strong symmetrical pulses. She was found to have good muscle tone, good range of movement, and no neurological deficits. An EKG and chest and left knee x-rays were normal, with a left ankle x-ray normal except for calcaneal spurring. Based on this medical evidence, the Secretary could properly find that claimant had sufficiently recovered from her aneurysm surgery by August 21, 1986 to perform substantial gainful activity. Indeed, Dr. Lugo, the medical advisor, expressly testified that the medical evidence supported this conclusion when he stated,

A "... My appreciation is one that is subjective, right, that possibly from the point of view of that problem she had and the seriousness it showed, she needed a period for recovery, a period of one year. But the notes indicate that she was well.

Q She was well since when?

A  One, 2 or 3 months after surgery. That she was feeling well. From the point of view of her symptoms.

Q  She was well.

A  She was well."

It is true that neither Dr. Manana, Dr. Villafane, nor any other examining physician provided a residual functional capacity assessment, restating their medical findings in functional terms, that could support the ALJ's finding that claimant could perform the full range of sedentary work. Where the record is bereft of any medical assessment of residual functional capacity, this court has found a lack of substantial evidence to support a finding that exertional impairments are not disabling, since the ALJ is not qualified to assess residual functional capacity on the basis of bare medical findings. *See Berrios v. Secretary of Health and Human Services,* 796 F.2d 574, 576 (1st Cir.1986); *Perez Lugo v. Secretary of Health and Human Services,* 794 F.2d 14, 15 (1st Cir.1986).

In this case, however, Dr. Lugo, the non-examining medical advisor, specifically assessed claimant's residual functional capacity. The ALJ asked,

"From the functional point of view, that is, I am referring to her capacity to perform a sedentary job where she wouldn't have to exert strength, lift heavy objects, her job is sitting regularly. From the physical point of view and her residual functional capacity could this claimant perform jobs of that nature?"

Dr. Lugo replied, "Yes, sir. From the physical point of view." By this testimony Dr. Lugo found that, based on the bare medical evidence in the file, claimant could perform sedentary work. The ALJ did not impermissibly assess residual functional capacity himself, but instead relied on the residual functional capacity assessment provided by Dr. Lugo.

This court has stated that "whether the testimony of a medical advisor who reviews the record and testifies at the hearing can itself alone constitute substantial evidence varies with the circumstances, including the nature of the illness and the information provided to the advisor." *Torres v.*

*Secretary of Health and Human Services,* 870 F.2d 742, 744 (1st Cir.1989). *See Guzman Diaz v. Secretary of Health, Education and Welfare,* 613 F.2d 1194, 1199 n. 7 (1st Cir.1980). In the instant case, the testimony of the non-examining medical advisor is relied on not to assess claimant's medical condition, but to assess claimant's residual functional capacity based on evaluations of claimant's medical condition submitted by examining physicians. In such a context, we conclude that the medical advisor's residual functional capacity assessment does constitute substantial evidence to support the Secretary's finding that claimant can perform the full range of sedentary work.

■  Claimant further objects to the ALJ's rejection of her claim that dizziness, resulting from medication claimant was taking as part of her recovery from surgery, significantly affected her ability to perform the full range of sedentary work. She points to Dr. Lugo's testimony that this medication (Dilantin) can produce dizziness and lack of balance. However, the Secretary was entitled to rely on the finding of an examining physician, Dr. Davila, in a June 3, 1986 examination that claimant had no dizzy spells.

■  Claimant further asserts that the Secretary erred in applying the grid to reach a finding of not disabled because claimant's mental impairment significantly affected her ability to perform a full range of sedentary work. However, the only psychiatric evaluation of claimant in the record, submitted by a treating psychiatrist at the Manati Mental Health Center, stated that although claimant was depressed, with her memory and judgment partially affected, she was aware of the environment, clean and well-groomed, coherent, relevant, and logical, and oriented in all spheres, with no cognitive deterioration. The psychiatrist diagnosed claimant's condition as a "dysthymic disorder with anxiety." We think the Secretary could properly conclude on the basis of this report—portraying as it does a relatively mild mental condition—that claimant's mental impairment did not

significantly affect her ability to perform sedentary work.

> "[W]e cannot believe the grids are formulated to reflect the availability of jobs in the national economy only for physically impaired claimants with "entirely normal" emotional and psychological makeups. If the grids are to serve their intended purpose, we think their use cannot be defeated by low-level personality and emotional disorders that undoubtedly afflict—at least from time to time—vast numbers of the populace."

*Borrero Lebron v. Secretary of Health and Human Services*, 747 F.2d 818, 820 (1st Cir.1984) (*quoting Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir.1984)). Although undoubtedly the ALJ could profitably have arranged for additional consulting psychiatric examinations to buttress the otherwise sparse record on this point, we cannot agree with claimant that the ALJ was bound to do so under the circumstances.

■ Finally, claimant faults the Secretary's determination because it does not "take into account the actual ability of the claimant to find and hold a job in the real world." This objection is meritless because the Social Security Act specifically states that an individual is disabled only if he cannot engage in any substantial gainful work which exists in the national economy, "regardless of whether such works exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). *See* 20 C.F.R. § 404.1566.

The judgment of the district court is *affirmed*.