**Susan K. PILET, Plaintiff,**

v.

**Kenneth S. APFEL,[1] Commissioner of the Social Security Administration, Defendant.**

**No. Civ.A. 97–10478–WGY.**

United States District Court, D. Massachusetts.

Sept. 23, 1998.

---

1. On September 29, 1997, Kenneth S. Apfel was sworn in as the new Commissioner. Pursuant to Fed.R.Civ.P. 25(d)(1), Apfel is substituted as a party defendant for his predecessor in office, Shirley Chater. *See* Fed.R.Civ.P. 25(d)(1) ("the action does not abate and the officer's successor

is automatically substituted as a party"); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security").

Taramattie Doucette, Greater Boston Legal Services, Boston, MA, for Susan K. Pilet, plaintiff.

Christopher M. Tauro, Assistant U.S. Attorney, Boston, MA, for Shirley Chater, Commissioner of the Social Security Administration, Kenneth S. Apfel, John J. Callahan, defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This is an action under Sections 205(g) and 1361(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3). The plaintiff, Susan Pilet ("Pilet"), seeks judicial review of a final decision, dated May 25, 1995, of the Commissioner of the Social Security Administration ("the Commissioner") denying her applications for Social Security Disability Insurance Benefits (SSDI) and Supplemental Security Income (SSI). The Appeals Council denied Pilet's request for review, rendering the determination of the Administrative Law Judge the final decision of the Commissioner subject to judicial review. *See* 20 C.F.R. §§ 404.981, 416.1481. Pilet asks this court either to reverse and set aside the Commissioner's decision, or to remand her claim. She claims that new evidence should have been reviewed by the Administrative Law Judge, that the Administrative Law Judge made errors of law, and that there was no substantial evidence upon which he might properly base his decision to deny her benefits. She seeks reasonable attorney fees and costs.

## I. BACKGROUND

Pilet, born August 4, 1961, was 34 years old at the time of the decision of the Administrative Law Judge. She graduated from high school and completed one year of college (Tr. 35–36, 104). Between 1989 and 1993 she held several office jobs, each lasting between 2 and 14 months. She left her job as an administrative assistant and as a medical assistant in a podiatry clinic because of alleged chronic back pain (Tr. 198). Between 1993 and 1995, the period when she was seeking treatment for her back pain, Pilet engaged in seven months of training sponsored by the Massachusetts Rehabilitation Commission (Tr. 37–38), and a part time training program to become a respite aid worker (Tr. 199).

Pilet applied for SSI and SSDI benefits on July 15, 1993 (Tr. 49–53), claiming a disabling combination of physical and mental impairments. Pilet's applications were denied initially on September 24, 1993, and again upon reconsideration on February 18, 1994 (Tr. 13, 23, 65–95). Pilet timely filed a request for a hearing and was heard on February 16, 1995 (Tr. 10–48). The Administrative Law Judge, in a decision dated May 25, 1995, found that Pilet was not disabled through December 31, 1993, when last she met the disability insured requirements of the Social Security Act, or through the date of his decision (Tr. 10–26). He found that Pilet's allegations of an inability to perform even sedentary work during the relevant period were not supported by substantial objective medical evidence or by the conclusions of any treating or examining physician and that her own allegations of pain could not convincingly add to the record in order to constitute a credible basis for disability unsupported by the objective evidence (Tr. 22). Subsequently, the Appeals Council denied Pilet's request for review (Tr. 4–5).

In 1984, Pilet was injured in an automobile accident. She was riding an MBTA bus with two of her children on her lap when the bus stopped abruptly while her head was turned (Tr. 42). Between 1984 and 1989, in order to alleviate her neck and upper back pain, she began to take—and eventually became addicted to—cocaine (Tr. 196). By 1989, she had stopped taking drugs and has not used them since (Tr. 45).

There is no medical evidence that she suffered back pain between 1989 and 1991 (Tr. 104, 124, 146, 149, 198) as her initial complaints of back pain did not start until the end of 1992 (Tr. 173). By March, 1993, Pilet developed lower back pain with radiation to both legs (Tr. 173–174, 196–200). She started treatment with Dr. Emilio Jacques in June, 1993. X-rays of the lumbar spine taken on June 30, 1993, revealed mild lumbar degenerative changes at the L3–L4 level with minor anomaly of L5 (Tr. 155). The doctor's examination found tenderness over the right sacroiliac joint and the right sciatic notch (Tr. 155–160). In July, Dr. Jacques diagnosed Pilet with "chronic low back syndrome

secondary to degenerative joint disease" (Tr. 158). Her back pain continued through October, 1993, when Dr. Jacques stated that Pilet was "disabled to work at the present time" (Tr. 160). Shortly thereafter she stopped seeing Dr. Jacques, claiming that her condition had not improved during the time he was treating her (Tr. 196–197). She did not seek further medical treatment for her back pain until March, 1994, when she attended an evaluation at the behavioral medicine pain program at Deaconess Hospital and was prescribed Amitriptyline[2] by Dr. Janet Yardley (Tr. 174). At her hearing, she testified that she "has a lot of pain in it in the spine itself." (Tr. 38). She further testified that she "also get a lot of pains going down [her] legs." *Id.* Through 1995 Pilet did not seek out medical care for her back pain, although she claimed that she was unable to work full time as a result of that pain (Tr. 44).

Pilet also complained of psychological impairments including depression and insomnia. Although she underwent a one-year course of psychotherapy in October, 1991, at Brigham and Women's Hospital (Tr. 167), there is no further objective evidence of her depression until December, 1993, when Pilet was diagnosed by Dr. Carin Roberge as suffering from recurrent major depression without psychotic features and a sleep-wake schedule disorder (Tr. 167–170). By January, 1994, Dr. Roberge commented that Pilet's condition had improved significantly over the month and that her prognosis was good (Tr. 162). Shortly thereafter, Pilet stopped seeing Dr. Roberge because she felt that she was "OK" and that she could go back if necessary (Tr. 39, 44). In February, 1994, Dr. John Warren, in his Residual Physical Functional Capacity Assessment (RPFC) of Pilet, found that she was depressed and needed medication (Tr. 74) and that she had an affective disorder which resulted in a moderate limitation in her daily living (Tr. 92). There is no evidence of other psychological treatment or evaluation prior to the decision of the Administrative Law Judge in May, 1995.

Pilet allegedly relapsed into a deep depression in April, 1995 (Tr. 196).

In November, 1995, after the Administrative Law Judge made his decision in May 1995, Pilet was hospitalized after making a suicide attempt. Upon hospitalization, she admitted to visual and auditory hallucinations and to having been depressed for many years (Tr. 213–214). Although there is no discussion in this report about her back pain, Dr. Leonard Marcus, in his discharge report, stated that the primary cause of Pilet's depression was her ongoing struggle with her chronic pain syndrome as well as the financial stresses which arose as a result of her not being able to hold down a steady job (Tr. 210). In December she was examined by Dr. Scott Haas, who found that her motivation and focus appeared at times to be diminished and that her undersocialization undermined her overall ability to develop and sustain adequate motivation as well as persist in solving problems of increasing difficulty (Tr. 202). He diagnosed her as suffering from an antisocial personality disorder (Tr. 201–208).

In 1996, Pilet filed a new application for SSI benefits and was found to be disabled (Complaint ¶ 10). This dispute thus focuses on the period between the application for benefits which was denied in May, 1995, and the grant of benefits in 1996.

## II. ANALYSIS

### A. The Standard of Review

This Court's review of a Social Security disability benefit determination is limited under 42 U.S.C. § 405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *See also Durant v. Chater,* 906 F.Supp. 706, 710 (D.Mass.1995). The First Circuit has defined "substantial evidence" as existing " '[when] a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.' " *Ortiz v. Secretary of Health & Hum.*

---

**2.** Amitriptyline is a mildly-sedating tricyclic antidepressant that was prescribed in order to alleviate her insomnia as well as her back pain.

*Servs.*, 955 F.2d 765, 769 (1st Cir.1991) (quoting *Rodriguez v. Secretary of Health & Hum. Servs.*, 647 F.2d 218, 222 [1st Cir. 1981]). The Commissioner is responsible for determining issues of credibility and drawing inferences from the record evidence. *Id.* Accordingly, this Court must affirm the Commissioner's denial "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodriguez Pagan v. Secretary of Health & Hum. Servs.*, 819 F.2d 1, 3 (1st Cir.1987), *cert. denied*, 484 U.S. 1012, 108 S.Ct. 713, 98 L.Ed.2d 663 (1988).

## B. Disability Standard

A district court reviewing a decision of the Commissioner must determine whether the decision is supported by substantial evidence and conforms to statutory requirements. *See Geoffroy v. Secretary of Health & Hum. Servs.*, 663 F.2d 315, 319 (1st Cir.1981). The relevant statute defines a disabled individual as one who is unable:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...

42 U.S.C. § 423(d)(1)(A) (1982). Section 423(d)(2)(A) further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...

*Id.* § 423(d)(2)(A).

The Commissioner has promulgated regulations that employ a series of tests to determine whether a claimant is disabled. 20 C.F.R. § 404.1520 (1985). *See Goodermote v. Secretary of Health & Hum. Servs.*, 690 F.2d 5, 6 (1st Cir.1982). In particular, the Social Security Administration asks five questions in the following order:

First, is the claimant currently engaged in a substantial gainful activity? If so, the claimant is automatically considered not disabled. 20 C.F.R. 404.1520(b) (1997).

 Second, does the claimant have a severe impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities? 20 C.F.R. § 404.1520(c). If medical signs and findings show that there is a medically determinable physical or mental impairment present that could reasonably be expected to produce pain, then allegations of that pain will be considered as evidence in a determination of the severity of claimant's impairment(s). *See Avery v. Secretary of Health & Hum. Servs.*, 797 F.2d 19, 27 (1st Cir.1986). If a claimant does not have a severe impairment, then the claimant is considered not disabled.

Third, if a claimant has a severe impairment which meets the duration requirement, the next question is whether the impairment or combination of impairments is listed in or equivalent to impairments listed in 20 C.F.R. Part 404, Supt. P, App. 1 (hereinafter Appendix 1). If so, then the claimant is automatically considered disabled. *See* 20 C.F.R. § 404.1520(d).

These first three tests are threshold "medical" tests. If the claimant is found to have a severe impairment (test 2) but that impairment is not equivalent to one listed in Appendix 1 (test 3), the agency goes on to the fourth and fifth questions, which apply "vocational" tests.

The fourth question asks whether the claimant's impairment prevents her from performing the sort of work she has done in the past. *See* 20 C.F.R. § 404.1520(e). If not, she is not disabled. If so, the agency asks the fifth question: Does the claimant's impairment prevent her from performing other work of the sort found in the economy? *See* 20 C.F.R. § 404.1520(f). If so, she is disabled; if not, she is not disabled. *See Goodermote*, 690 F.2d at 6–7.

In applying these last two "vocational" tests, the claimant has the burden of proving that she is disabled under the fourth test; that is, she must prove that her disability is

serious enough to prevent her from working at her former jobs. The Commissioner, however, bears the burden of showing that the claimant has not satisfied the fifth test; that is, the Commissioner must show the existence of other jobs in the national economy that the claimant's impairment does not prevent her from performing. *See id.* at 7.

## C. Sequential Analysis

Both sides agree that claimant was not engaged in substantial gainful activity at the time she filed for disability benefits (step one). Furthermore, the decision of the Administrative Law Judge states that "the record shows that the claimant continues to have an exertional impairment which is 'severe' within the meaning of Section 404.1520(c) of Regulations Number 4 and Section 416.920(c) of Regulations Number 16" (Tr. 14) (step two).

The decision to deny benefits was based on step three of the sequential analysis. There the issue was, and is, whether Pilet's impairments met the twelve month duration requirement and were either listed in Appendix 1 or equal to those listed impairments. Although Pilet alleges both physical (lower back pain) and psychological (Dr. Haas's diagnoses of undersocialization and affective disorder) impairments, neither, on its own, constitutes a severe impairment that both meets the duration requirement and that is listed in Appendix 1. Nor is either equivalent to an impairment listed in Appendix 1.[3]

■ It remains, then, to consider whether Pilet suffered from a severe combination of physical and mental impairments for the required duration. Although there is evidence that Pilet suffered from depression, she stated at her hearing that her depression "comes and goes" and that it was not as bad in 1993 (Tr. 41). Since Pilet's depression was not an on-going, chronic impairment, the Administrative Law Judge did not commit legal error when he failed to evaluate the combined effects of Pilet's depression and back pain.

Pilet has submitted new evidence from Dr. Haas that could be admitted to demonstrate the existence of a chronic, non-severe mental impairment, but this mental condition alone would not be sufficient to make Pilet eligible for disability benefits. Pilet would have to demonstrate that she had a coinciding physical impairment that lasted or could have lasted for at least a twelve month period. As a result, even if the Administrative Law Judge were to consider Dr. Haas' report now, it would not reasonably permit a different decision.

Finally, the Administrative Law Judge decided that Pilet's lower back problems did not constitute an ongoing severe impairment that had lasted for the required duration. The record shows that Pilet developed lower back pain in March, 1993, and that she sought treatment for this condition until October, 1993. In the doctor's final evaluation of Pilet, he stated that she was "disabled to work at the present time" with no mention of how far into the future she could expect to remain in a "disabled" condition.[4] Given the lack of on-going medical treatment, there is substantial evidence for the finding that Pilet did not have a disabling combination of impairments for the required duration.

## D. Evaluation of Pain and Credibility

■ Pilet also claims that the Administrative Law Judge misapplied the pain standard

---

3. If a claimant has two or more concurrent impairments which, when considered in combination, are severe, the Administrative Law Judge must also determine whether the combined effect of those impairments can be expected to continue to be severe for twelve months. If one or more of the impairments improves or is expected to improve within twelve months, so that the combined effect of the remaining impairments is no longer severe, the Commissioner will find the claimant does not meet the twelve-month duration test. 20 CFR § 404.1522(b). Furthermore, in determining whether a claimant's physical or mental impairment or impairments are of a sufficient medical severity, the Commissioner will consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 CFR § 404.1523, *see also McDonald,* 795 F.2d at 1127.

4. It should be noted that "[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled." 20 CFR § 416.1527(e)(1); *see also Arroyo v. Secretary of Health & Hum. Servs.,* 932 F.2d 82, 89 (1st Cir.1991).

and that his credibility finding was not supported by substantial evidence. The legal standard for evaluating claimant's pain is set out in 42 U.S.C. § 423(d)(5)(A) which provides that:

An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C. § 423(d)(5)(A); see also 20 C.F.R. § 404.1529; Avery, 797 F.2d at 28–29. The Court of Appeals for the First Circuit has stated that "subjective symptoms [including pain] must be evaluated with due consideration for credibility, motivation and medical evidence of impairment." See Wauzinski v. Shalala, 1994 WL 725176 at *10 (D.Mass. 1994) (Wolf, J.) citing Gray v. Heckler, 760 F.2d 369, 374 (1st Cir.1985). A finding that a claimant is not credible "must be supported by substantial evidence" and must be bolstered by specific findings as to the relevant evidence considered in determining to disbelieve the claimant. Da Rosa v. Secretary of Health & Hum. Servs., 803 F.2d 24, 26 (1st Cir.1986). The factors to be considered when assessing the credibility of claimant's pain are highlighted in Avery. They are:

(1) The nature, location, onset, duration, frequency, radiation, and intensity of the pain; (2) Precipitating and aggravating factors (e.g. movement activity, environmental conditions); (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) Treatment, other than medication, for relief of pain; (5) Functional restrictions; and (6) The claimant's daily activities.

Avery, 797 F.2d at 28–29.

■ Since Pilet's allegations of disability were somewhat inconsistent with the medical record, the Administrative Law Judge evaluated the degree to which her alleged pain and other symptoms, during the relevant period, constituted an additional limitation on her ability to perform substantial gainful activity (Tr. 19). The Administrative Law Judge interpreted Pilet's engagement in vocational training programs and her reliance on a single painkiller as evidence that Pilet's pain was not sufficiently severe as to be disabling within the definition of the Act. Id. At her hearing, Pilet and her counsel stressed the fact that Pilet was engaging in training in order to improve herself, and that back pain limited her ability to complete her programs. They also discussed Pilet's unwillingness to take more drugs because of her prior addiction. Although this evidence could have swayed a hearing officer into finding her allegations of pain credible, here, given the limited amount of objective medical findings, there was substantial evidence upon which the Administrative Law Judge could ground his conclusion that Pilet's allegations were not credible and that she was, in fact, capable of returning to work.

### E. Remand

In aid of her appeal, seven months after the Administrative Law Judge had denied her application for SSI and SSDI benefits, Pilet submitted three additional pieces of evidence to document the severity of her mental condition. She now argues that, even if this Court does not reverse the questioned deci-

sion outright, it ought at least remand the case to the Commissioner for further proceedings.

 Before a district court can remand a case for review of evidence submitted after the agency decision, two conditions must be met. *See* 42 U.S.C. § 405(g). First, the evidence must be material. To be material, the evidence must be 1) necessary to fully develop the facts of the case, 2) non-cumulative, and 3) essential to a fair hearing. *See Bilodeau v. Shalala,* 856 F.Supp. 18, 20 (D.Mass.1994) (citing *Evangelista v. Secretary of Health & Hum. Servs.,* 826 F.2d 136, 139 [1st Cir.1987] ). New evidence will not be considered material if it concerns deterioration of a non-disabling impairment that occurred subsequent to the decision. *See Rawls v. Apfel,* 998 F.Supp. 70, 76 (D.Mass. 1998) (citing *Tirado v. Bowen,* 705 F.Supp. 179, 182 [S.D.N.Y.1989] ). It will, however, be considered material if it demonstrates a continuing psychiatric condition that may be severe and chronic. *See Rawls,* 998 F.Supp. at 76 (citing *Sears v. Bowen,* 840 F.2d 394, 401 [7th Cir.1988] ). Also, the evidence "must permit the conclusion that the Secretary's final decision might reasonably have been different had the evidence been present at the time of decision." *Falu v. Secretary of Health & Hum. Servs.,* 703 F.2d 24, 27 (1st Cir.1983); *Evangelista,* 826 F.2d at 140.

Second, the claimant must have had good cause for not presenting the evidence prior to the decision. "It is sufficient if the evidence proffered by [the claimant] was unavailable at the time of the Secretary's administrative proceedings." *Bilodeau,* 856 F.Supp. at 21 (citing *Geigle v. Sullivan,* 961 F.2d 1395 [8th Cir.1992] ).

 The first piece of evidence that Pilet believes should cause a remand is the plaintiff's affidavit, detailing the nature of her impairments and her pain. Given that Pilet was accompanied at her hearing by an experienced paralegal from Greater Boston Legal Services, she can show no good cause why this information was not made available prior

to the decision. *See Evangelista,* 826 F.2d at 142. Remand is not necessary to consider the affidavit.

The second piece of evidence, the claimant's record at the Carney Hospital, is also insufficient to form the basis for remand because it is not material to the relevant time period. While the record demonstrates that Pilet suffered from severe depression after making a suicide attempt, these data delineate the extent to which her condition deteriorated subsequent to the decision.

Finally, Pilet submitted a psychological report by Dr. Haas who found that Pilet was undersocialized and had an affective disorder. Unlike the depression that was documented by Dr. Roberge,[5] these are findings of chronic—albeit non-severe—problems from which claimant suffered during the relevant time period and for the required duration. As discussed above, however, the inclusion of this new evidence in the record would not be sufficient reasonably to permit the Administrative Law Judge to change his decision. Therefore, Dr. Haas's report, like the other pieces of evidence, does not form a basis for remand.

### III. Conclusion

For the foregoing reasons, the decision of the Administrative Law Judge is AFFIRMED, and Pilet's motion for summary judgement is DENIED.

---

5. Dr. Haas also made findings regarding Pilet's state of depression. Since these are indicative of the deterioration of Pilet's condition after the decision, this part of his report could not be considered on remand.