**Jill ROHRBERG, Plaintiff,**

v.

**Kenneth S. APFEL, Acting Commissioner, Social Security Administration, Defendant.**

**Civil Action No. 98–30003–FHF.**

United States District Court, D. Massachusetts.

Nov. 12, 1998.

Janet M. Sheppard, Northampton, MA, Gregory W. Peterson, Elverson, Vasey & Peterson, Des Moines, IA, for Jill Rohrberg, plaintiff.

Karen L. Goodwin, U.S. Attorney's Office, Springfield, MA, for Kenneth S. Apfel, Commissioner of Social Security, defendant.

*MEMORANDUM AND ORDER*

FREEDMAN, Senior District Judge.

## I. INTRODUCTION

This action is before the Court pursuant to Section 205(g) of the Social Security Act ("the Act") which provides for judicial review of a final decision by the Commissioner of Social Security ("Commissioner") respecting an individual's entitlement to benefits. *See* 42 U.S.C. § 405(g). Plaintiff Jill Rohrberg ("Rohrberg") is seeking a period of Social Security Disability Insurance ("SSDI"). Plaintiff alleges that the Commissioner's decision denying her the sought-after benefits is erroneous and is not supported by substantial evidence. Accordingly, Rohrberg moves to reverse the Commissioner's decision. In opposition, the Commissioner moves for affirmance of the final administrative decision.

## II. FACTUAL AND PROCEDURAL HISTORY

Rohrberg applied for SSDI benefits on January 17, 1994, alleging that she became unable to work on July 30, 1993, due to "Crohn's disease [and] Chronic Immune Deficiency Syndrome." Administrative Record ("A.R.") at 87–89, 149. The Social Security Administration ("SSA") denied her application initially and on reconsideration. *See id.* at 90–116, 120–41. On February 1, 1996, the Administrative Law Judge ("ALJ") found that Rohrberg's impairment prevented her from performing her past relevant work as an advertising media director. *See id.* at 33. The evidence in the Administrative Record used by the ALJ to reach her finding included Rohrberg's testimony from the hearing, her treating physician's notes and letters written in the context of Rohrberg's application for benefits, and the opinions of a Vocational Expert ("VE") based on the ALJ's hypothetical residual functioning capacity ("RFC"). *See id.* at 22–38. The ALJ then found that Rohrberg possessed work skills which could be applied to other work existing in significant numbers in the national economy and that she was, therefore, not disabled. *See id.* at 33–34. The ALJ's decision became final when the Appeals Council denied the plaintiff's request for review on October 10, 1997. *See* A.R. at 6–7.

## III. STANDARD OF REVIEW

The Court may not disturb the Commissioner's decision if it is grounded in sub-

stantial evidence. *See* 42 U.S.C. § 405(g). The Supreme Court of the United States has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Even if the record could support multiple conclusions, the Court must uphold the Commissioner "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [his] conclusion." *Irlanda Ortiz v. Secretary of Health and Human Servs.*, 955 F.2d 765, 769 (1st Cir.1991) (quoting *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir.1981)); *see also Richardson*, 402 U.S. at 401, 91 S.Ct. 1420. Even if the record arguably could justify a different result, the Court must affirm the Commissioner's resolution so long as substantial evidence supports it. *Rodriguez Pagan v. Secretary of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir.1987), *cert. denied*, 484 U.S. 1012, 108 S.Ct. 713, 98 L.Ed.2d 663 (1988). In determining the substantiality of the evidence, the Court will "examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir.1994).

## IV. DISCUSSION

### A. *Disability Standard*

In order to qualify for disability benefits under the Act, an individual must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 401 *et seq.;* 42 U.S.C. §§ 1381 *et seq.; Martinez v. Shalala*, 911 F.Supp. 37, 41 (D.Mass.1996). Under the provisions of the Act, an individual suffers from a disability if he is unable to participate

> in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months....

42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). To be considered disabled, an individual's "physical or mental impairment" must be

of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work....

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1328c(a)(3)(B).

Pursuant to SSA regulations, the Commissioner utilizes a sequential five-step analysis to determine whether a plaintiff is disabled. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. In particular, the Commissioner considers the following factors, in order: First, if the claimant is currently working, then the claimant is automatically considered not disabled; second, if the claimant does not have a severe impairment—one "which significantly limits his or her physical or mental capacity to perform basic work-related functions"—then the claimant is automatically considered not disabled; third, if the claimant has an impairment equivalent to a specific list of impairments contained in Appendix 1 of the regulations, then the claimant has an impairment of such a serious degree of severity that the claimant is found automatically disabled; fourth, if the claimant has a severe impairment but can still meet the physical and mental demands of work he has performed in the past, then the claimant is not disabled; fifth, considering the claimant's age, education, and experience, if the claimant's severe impairment prevents him from performing not only his past work, but also other work available in the national economy, then the claimant is disabled. *See Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6–7 (1st Cir.1982) (applying five-step analysis to Social Security Disability Insurance claim); *see also* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff bears the burden in the first four steps of showing that she is disabled. *See Goodermote*, 690 F.2d at 7. Once the claimant has established that she is unable to return to her former employment,

however, the burden shifts to the Commissioner to prove the fifth step, that the claimant is able to engage in substantial gainful activity that exists in significant numbers in the national economy. *See id.*

### B. Disability Analysis

Evaluating the evidence in this case according to the required five-step analysis, the ALJ first found that Rohrberg had not engaged in substantial gainful activity since July 30, 1993. *See* A.R. at 32. Next, the ALJ found that the medical evidence established that Rohrberg suffered from "severe" Crohn's disease and mild depression, but that neither of these impairments equated with one of the "automatically disabling" impairments listed in Appendix 1 of the regulations. *Id.* at 33; *see* C.F.R. Part 404, Subpart P, Regulations No. 4., Appendix 1. Therefore, the ALJ moved to an evaluation of Rohrberg's work capacity. At step four, the ALJ found that Rohrberg was unable to perform her past relevant work. *See* A.R. at 33.

At this point the burden shifted to the Commissioner to prove by substantial evidence: 1) Rohrberg's ability to perform jobs; 2) available in significant numbers in the economy. *See Goodermote,* 690 F.2d at 7. The ALJ found that Rohrberg had an RFC which allowed her to

> perform the full range of at least sedentary work lifting no more than 10 pounds at a time and sitting with a certain amount of walking or standing. She is further limited in that she cannot tolerate excessive stress and requires a degree of independence which would permit her to change positions at will and use the facilities as often as required.

A.R. at 30.

The ALJ found this RFC based on a perceived adjustment of medication to "accommodate any intolerance," notations in Rohrberg's doctor's notes that she was "slowly improving," a good prognosis in her doctor's notes, and improvement through dietary adjustments. The ALJ also based the RFC on Rohrberg's daily activities, which included doing yoga, reading, walking, doing dishes and laundry, cooking, running errands, returning telephone calls, attending movies,

and traveling from Lynn to Boston to meet her dietary needs. *See* A.R. at 30–31. The ALJ concluded that Rohrberg's "subjective assertions of disabling symptoms ... are inconsistent with her behavior." *Id.* at 31.

The ALJ further found that though Rohrberg

> does experience some symptoms such as frequent bowel movements and some rectal bleeding, for which allowances have been made, it does not seem that these symptoms would prevent her from performing at least sedentary work. Although it has been alleged that the claimant is intolerant of medication, the office notes of Dr. Wolf indicate that by October of 1993, the claimant's medication had been satisfactorily adjusted.

*Id.*

The ALJ used this RFC in the hypothetical she posed to the VE:

> [W]ould you be able to identify any occupations that might be available, hypothesizing a 38 year old with a Bachelor of Science degree, a college education, and past sedentary, skilled work experience. Would you be able to identify for us any occupations at the sedentary level that would have a minimum amount of stress, would be essentially a non-production job, and would have a degree of independence that would permit sitting, standing as necessary, and frequent use of the facilities as required?

*Id.* at 76. The VE answered that there were significant numbers of applicable occupations in the economy. *See* A.R. at 75–78. On examination by Rohrberg, however, the VE did note that "[i]f there was a marked impairment in her ability to complete a normal workday, and to complete the essential functions of a job ... [it] would prohibit her from engaging ... in these occupations." *Id.* at 80. The ALJ then asked about the availability of home-based employment. *See id.* at 81. The VE responded that these positions were very limited and that less than 10% of the 7,290 Massachusetts telemarketers were home-based. *See id.* at 81–82. The ALJ also noted that if Rohrberg were able to attend less than 50% of meetings because of

the need to use the restroom, it would render her unable to work. *See id.* at 32. Considering Rohrberg's "significant periods of remission," however, the ALJ concluded that Rohrberg would be able to meet the attendance threshold. *See* A.R. at 32.

Based on this RFC and the VE's opinion that according to the ALJ's RFC sufficient number of jobs existed in the regional and national economies, the ALJ found that the claimant was not disabled within the meaning of the Act. *See id.*

## C. Review of the Record

In her motion, Rohrberg generally maintains that the ALJ's disability determination is not supported by substantial evidence in the record. Specifically, Rohrberg asserts that (1) the ALJ erred by submitting an inaccurate hypothetical to the VE and, therefore, cannot rely on the VE's opinion; (2) the ALJ erred by usurping the role of medical advisor while failing to properly weigh testimony of treating physicians; (3) the ALJ committed an error of law by failing to make an individualized assessment of plaintiff's ability to handle stress in the workplace and by failing to consider the combined effects of plaintiff's impairment; (4) the ALJ drew unsupported conclusions as to the plaintiff's credibility and her RFC based on plaintiff's daily activities; and (5) the ALJ's evaluation of the plaintiff's RFC is flawed because the RFC findings are not supported by substantial evidence. The Court will review those objections grounded in the record.

### 1. The ALJ's RFC Determination

#### a. Pain Analysis

■ An ALJ must consider a claimant's subjective assertion of pain by examination of the following factors: (1) the nature, location, onset, duration, frequency, radiation, and intensity of pain; (2) any precipitating or aggravating factors; (3) the type, dosage, effectiveness, and adverse side effects of any pain medication; (4) any treatment, other than medication, for the relief of pain; (5) any functional restrictions; and (6) the claimant's daily activities. *See Avery v. Secretary of Health and Human Servs.*, 797 F.2d 19, 29

(1st Cir.1986); *Dedis v. Chater,* 956 F.Supp. 45, 54 (D.Mass.1997).

■ A review of the record quickly reveals that the ALJ erred as a matter of law by not examining Rohrberg's claims of pain according to the *Avery* standard of review. The ALJ found that "[a]lthough it is clear that the claimant does experience some symptoms such as frequent bowel movements and some rectal bleeding, for which allowances have been made, it does not seem that these symptoms would prevent her from performing at least sedentary work." A.R. at 31. Rohrberg stated in her examination that she suffered abdominal pain and cramping as well as rectal bleeding. *See id.* at 54, 57–58, 60, 62, 64. Nevertheless, the ALJ did not question her at all about the nature, location, onset, duration, frequency, radiation, and intensity of her pain. Nor did the ALJ question Rohrberg about any precipitating or aggravating factors to her pain. The ALJ did not question Rohrberg about her pain medications, any non-medication treatment for her pain, or her functional restrictions.

An ALJ must also comprehensively consider a claimant's daily activities. *See Avery,* 797 F.2d at 28–29. Specifically, the ALJ "shall obtain detailed descriptions of daily activities by directing specific inquiries about the pain and its effects to the claimant, his/her physicians from whom medical evidence is being requested, and other third parties who would be likely to have such knowledge." *Id.* at 28. A determination of RFC must "includ[e] a discussion of why reported daily activity restrictions are or are not reasonably consistent with the medical evidence." *Id.* at 29.

While the ALJ did question Rohrberg about her daily activities, she did so in a cursory manner. *See* A.R. at 64–73. This examination revealed some of Rohrberg's daily activities but not to the extent necessary to consider their reflection on her functional abilities. *See Avery,* 797 F.2d at 28–29. For example, the ALJ learned that Rohrberg practiced yoga. *See* A.R. at 71. The ALJ, however, never determined how often or for how long the yoga lasted; whether she practiced close to the bathroom; on days when she did not feel well; or whether the yoga

was part of a mental or physical regimen used to treat her Crohn's disease or depression. The ALJ also determined that Rohrberg ran errands, *see* A.R. at 31, but did not examine the limitations on her errand running. The record reveals that while the ALJ examined Rohrberg's daily activities, she did so in a cursory manner which did not allow for meaningful determination of Rohrberg's RFC or of her subjective assertions of pain.

■ The Court concludes that the ALJ made a woefully inadequate examination of Rohrberg's "subjective assertions" of pain. The purpose of the RFC is to determine the effects of the claimant's impairment on her ability to perform work, including any limitations on that ability resulting from pain. *See Avery*, 797 F.2d at 28. Examining the claimant's daily activities helps to shed light on the veracity of the claimant's claims of pain and illuminate an RFC determination. *See id.* at 28–29. But where the ALJ makes a cursory examination of the claimant's daily activities and concludes that they are inconsistent with her claims of pain, without any specific explanation or reference to supporting evidence in the record, a reviewing court is left in the dark and the RFC is cast in a pallor of doubt.

■ Because the ALJ in this case failed to even question Rohrberg about five of the *Avery* factors and failed to determine adequately the extent of the sixth—her daily activities—this Court concludes that the ALJ did not sufficiently consider Rohrberg's subjective claims of pain. *See id.* As a result, the Court concludes that the ALJ's determination of Rohrberg's RFC was analytically flawed and not supported by substantial evidence. Where, as here, there is no substantial evidence to support the ALJ's decision because she "failed to conduct a proper inquiry into [claimant's] subjective allegations of pain," that decision must be reversed. *Corchado v. Shalala*, 953 F.Supp. 12, 15 (D.Mass.1996) (reversing and remanding for findings). While this error alone would suffice for a remand, *see id.*, the Court will also consider the ALJ's credibility determination and the medical evidence.

### b. *Credibility Determination*

■ An ALJ resolves conflicts in the record and makes credibility determinations, but she cannot base such findings on groundless assertions; they must have the support of substantial evidence. *See Frustaglia v. Secretary of Health and Human Servs.*, 829 F.2d 192, 195 (1st Cir.1987). Credibility determinations "must be supported by substantial evidence and the ALJ must make specific findings as to the relevant evidence [s]he considered in determining to disbelieve the [claimant]." *DaRosa v. Secretary of Health and Human Servs.*, 803 F.2d 24, 26 (1st Cir.1986); *see, e.g., Pilet v. Apfel*, 20 F.Supp.2d 240, 246–47, No. 97–10478, 1998 WL 678131, at *6 (D.Mass.1998); *Wauzinski v. Shalala*, No. 91–11905, 1994 WL 725176, at *10 (D.Mass. Dec.29, 1994). The ALJ's credibility findings must be "rationally supported." *LaRochelle v. Callahan*, No. 96–12583, 1998 WL 686718, at *5 (D.Mass. Sept. 28, 1998).

While the ALJ stated that the RFC determination was consistent with the medical evidence in the record, the RFC instead hinged on the ALJ's credibility determination. The ALJ supported Rohrberg's RFC on two grounds: (1) she explicitly discredited Ms. Rohrberg's testimony, apparently based solely upon her daily activities and claims of intolerance to medication; and (2) she disagreed with medical reports from Dr. Mann and Dr. Wolf because she found that they provided more pessimistic reports in the context of this claim than they reflected in their office notes. *See* A.R. at 30–31. Having thoroughly reviewed the record, the Court finds no substantial evidence to support either of these grounds. Nor does substantial evidence support the ALJ's finding that Rohrberg could perform sedentary work on a sufficiently regular basis to qualify as substantial gainful activity.

The ALJ found that Ms. Rohrberg could perform sedentary work in a low stress environment allowing change of position at will and use of the facilities "as often as required." A.R. at 30. The ALJ found this RFC despite the treating physician's reports and the plaintiff's "subjective assertions of disabling symptoms, [because she found]

these assertions [were] inconsistent with Rohrberg's behavior." A.R. at 31. The ALJ specifically stated that Rohrberg was "not accepted as a fully credible witness." *Id.* at 33.

■ The ALJ did not state any specific reason for finding that Rohrberg was not a credible witness. No substantial evidence exists in the record to support such a finding. The ALJ made no reference to Ms. Rohrberg's demeanor, evasiveness or combativeness, nor to any other observations indicating a basis for discrediting her testimony, such as contrary medical evidence or observation of activities which might reflect negatively on her credibility. The Court will not speculate on the basis for the ALJ's findings. The ALJ should bolster her reasoning with "specific findings as to the relevant evidence considered in determining to disbelieve the claimant." *Pilet,* 1998 WL 678131 at *6, 20 F.Supp.2d 240, 246–47. In the case before this Court, she did not. This Court will not save this decision by inserting the basis for a finding where there was not substantial evidence to support it and no specific findings justifying it as a rational result. *See DaRosa,* 803 F.2d at 26. As a result, the Court concludes that the ALJ's finding that Rohrberg was not a fully credible witness was not supported by substantial evidence. *See id.*

In addition, the record in this case shows that Ms. Rohrberg's activities were sporadic and consistent with her assertions. The record simply shows no evidence of indicia of unreliability or evidence of ability to work or to have regular attendance. For example, Rohrberg determined her ability to run errands daily which was very unpredictable from one day to the next. *See* A.R. at 58. She often wore only a bathrobe because clothes with waistbands aggravated her pain. *See id.* at 64. On good days Rohrberg could perform scheduled activities for two hours in the morning; she would then need to take an hour to an hour-and-a-half nap then repeat the same process with another nap in the afternoon. *See id.* at 65, 71. On bad days she was fatigued to the point of disorientation, was too dizzy to drive, would rest most of the day, and was unable to even pay bills. *See id.* at 72–73. Rohrberg could not even

schedule to teach a one-and-a-half hour yoga class one day a week because her Crohn's disease made her incapable of attending. *See* A.R. at 66. Further, Ms. Rohrberg's testimony and medical records support her claim of disability with no contradictory evidence of activities inconsistent with her "subjective assertions." *See id.* at 215–19.

In this respect, this case directly mirrors *Dix v. Sullivan,* 900 F.2d 135 (8th Cir.1990), where the Eighth Circuit reversed a district court's affirmance of an ALJ's finding of no disability in a case involving a claimant with Crohn's disease. In that case the ALJ had determined that "inconsistencies of record indicate that [the claimant's] contentions regarding the effects which her Crohn's disease has on her are not credible and must be rejected." *Id.* at 136. The record, however, established that the claimant had active Crohn's disease and that medication improved but would not erase her various symptoms. *See id.* at 138. The court also noted that the claimant could "occasionally go fishing or engage in light activities," but concluded that " 'sporadic or transitory activity does not disprove disability.' " *Id.* at 138 (quoting *Smith v. Califano,* 637 F.2d 968, 971–72 (3d Cir.1981)); *see also Damron v. Secretary,* 778 F.2d 279 (6th Cir.1985) (claimant could do minimal dusting and prepare meals); *Nettles v. Schweiker,* 714 F.2d 833, 837 (8th Cir.1983) (claimant could take short walks, watch television and drive car infrequently and for short distances); *Smith,* 637 F.2d at 971–72 (claimant could shop and still went hunting).

In this case, Rohrberg had active Crohn's disease throughout her claimed period. *See* A.R. at 29, 33. She experienced diarrhea, depression, fatigue, nausea, and other symptoms. *See id.* at 215–17. The record also reveals that medication improved but would never cure Rohrberg's disease, and that she did have intolerances to her medication. *See id.* at 190, 193, 195, 216–17. Her limited activities do not contradict the impact of her disease on her life. " 'Disability does not mean that a claimant must vegetate in a dark room excluded from all other forms of human and social activity.' " *Waters v. Bowen,* 709 F.Supp. 278, 284 (D.Mass.1989) (quoting

*Smith,* 637 F.2d at 971). Rohrberg's "sporadic and transitory activities ... demonstrate ... [her] inability to engage in substantial gainful activity." *Waters,* 709 F.Supp. at 284 (quotations omitted). By undertaking activities intermittently, Rohrberg chose when to do them to avoid experiencing severe pain or to stop before the pain became overwhelming. As a result, Rohrberg's activities do not reflect the substantial, sustained, and regular activity needed for gainful employment; they serve as evidence of the claimant's limited abilities. *See id.* Further evidence of Rohrberg's limited abilities comes from the medical evidence in the record, as well as her doctor's reports and letters.

### c. *Medical Evidence*

Generally, the ALJ should give "more weight to the opinions from the claimant's treating physicians, because these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments." 20 C.F.R. § 404.1527(d)(1). In fact, the ALJ must "give controlling weight to the opinions of treating physicians if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record." *Id.* at (d)(2). Further, the First Circuit has addressed the distinction between cases where the opinion of the treating source should be given "controlling" weight and where lesser weight should be ascribed, observing that:

> [The regulation] does not mandate assignment of some unvarying weight to every report in every case. The ALJ is not required automatically to give controlling weight to any "treating" doctor's report, denominated as such.... "Controlling weight" may be assigned if the report meets the specified qualifications [of 20 C.F.R. § 404.1527(d)(2) ] and is not inconsistent with other substantial evidence.

*Rivera v. Secretary of Health & Human Servs.,* 986 F.2d 1407, No. 92–1896, 1993 WL 40850, at *3 (1st Cir. Feb.19, 1993) (table decision).

In this case, Dr. Wolf and Dr. Mann had clinical and laboratory evidence to support their findings that Rohrberg possessed limited physical capabilities and was disabled in their opinion. *See* A.R. at 215–18, 219–29. Notwithstanding the ALJ's unsupported statements, there was no substantial evidence of inconsistencies. As a result, the Court concludes that the treating physicians' opinions should have been given controlling weight. *See* 20 C.F.R. § 404.1527(d)(2).

Further, "the ALJ, although empowered to make credibility determinations and to resolve conflicting evidence, [is] not at liberty simply to ignore uncontroverted medical reports." *Suarez v. Secretary of Health and Human Servs.,* 740 F.2d 1, 1 (1st Cir.1984). An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence. *See Rodriguez v. Secretary of Health and Human Servs.,* 893 F.2d 401, 403 (1st Cir. 1989). Where the "medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) ... [the Commissioner may not] make that connection himself." *Rosado v. Secretary of Health and Human Servs.,* 807 F.2d 292, 292 (1st Cir.1986).

In this case, the ALJ determined Rohrberg's RFC on a disbelief of the bare medical findings in her doctors' reports as well as Rohrberg's testimony. The ALJ failed to refer to—and this Court has not found—a proper, medically determined RFC in the record. Consequently, the Court concludes that there was not substantial evidence to support the ALJ's RFC determination. *See Rodriguez,* 893 F.2d at 403.

Dr. Wolf's December 8, 1995 letter contained the closest thing to a medical RFC when it stated that "[d]uring the time [Rohrberg] is well, she could clearly work up to the amount that she can tolerate depending on her fatiguability." A.R. at 217. The letter also stated that "at her best, Rohrberg would likely have frequent interruptions at work requiring long uses of the bathroom. At her

worse, she would have some absences from work, bleeding, pain, and might need to stay home." *Id.* Even assuming *arguendo* that these statements qualified as a medically determined RFC, the ALJ's RFC was faulty because there was no medical evidence to support that finding. In this case, even if Dr. Wolf's statements sufficed to qualify as a medically determined RFC, the ALJ impermissibly "disregard[ed] the only residual functional capacity evaluation in the record ... [and] substituted [her] own judgment for uncontroverted medical opinion." *Rosado,* 807 F.2d at 292–93.

▉ Considering the record, and in light of the Court's conclusions that the ALJ inadequately examined Rohrberg's pain complaints, credibility, and the lack of a medically assessed RFC, the Court holds that the Commissioner failed to carry the burden of proving by substantial evidence that Rohrberg had the ability to engage in substantial gainful employment. *See Goodermote,* 690 F.2d at 7.

## V. CONCLUSION

The Act authorizes the Court to enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court may "at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.* This wording is "a mandate [from Congress] to foreshorten the often painfully slow process by which disability determinations are made." *Carroll v. Secretary of Health and Human Servs.,* 705 F.2d 638, 644 (2d Cir. 1983).

Further, the deferential treatment a reviewing court gives the ALJ's findings of fact "does not apply to [her] conclusions of law." *Anderson v. Secretary of Health and Human Servs.,* 634 F.Supp. 967, 971 (D.Mass.1984). "Where an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the [ALJ] by simply deferring to [her] factual findings." *Townley v. Heckler,* 748 F.2d 109, 109 (2d Cir.1984). "Failure to apply the correct legal standards is grounds for reversal." *Id.; see also DaRosa,* 803 F.2d at 26 ("when evidence has not been evaluated because of an error of law, however, the [Commissioner's] decision must be set aside").

The ALJ had ample opportunity to examine Rohrberg about her complaints of pain, sufficiently determine her daily activities, present contrary medical evidence, and obtain a medically determined RFC. *See Avery,* 797 F.2d at 29; *Rosado,* 807 F.2d at 292–93; 20 C.F.R. § 404.1527(d)(2); *see also* 42 U.S.C. § 405(g). The ALJ did none of these. The medical evidence supports Ms. Rohrberg's claim of disability and is entirely uncontroverted. The ALJ cannot simply ignore the medical evidence and satisfy the Commissioner's burden by her own unsupported, subjective judgment. *See Rosado,* 807 F.2d at 293–94. These errors of law compel reversal in this case.

After reviewing the record, the Court concludes that Rohrberg suffered from depression and active Crohn's disease which regularly caused severe pain, diarrhea, fatigue, nausea, and other symptoms starting July 30, 1993. These conditions and her resulting inability to engage in substantial gainful activity qualify her as disabled under 42 U.S.C. § 1382c(a)(3)(A). *See Dix,* 900 F.2d at 138.

▉ Rohrberg applied for disability benefits almost five years ago. Further delay would only lengthen what has proven a "painfully slow process." *Carroll,* 705 F.2d at 644; *see* 42 U.S.C. § 405(g). A "rehearing would serve only to delay the award of benefits." *Rosenthal v. Banks,* No. 95–10516, 1997 WL 881892, *2 (D.Mass. Aug.27, 1997) (quotations omitted). The Commissioner is not entitled to a second bite at this apple. Rohrberg proved that she was unable to return to her former employment and the Commissioner failed to present the required evidence to meet his burden. Because the Court finds no good cause for this lack of supporting evidence, "the appropriate relief is an award of benefits." *Field v. Chater,*

920 F.Supp. 240, 244–45 (D.Me.1995); *see* 42 U.S.C. § 405(g); *Dix,* 900 F.2d at 138 (reversing district court affirmance of denial of benefits to claimant with Crohn's disease and remanding for award of benefits).

For the foregoing reasons, Rohrberg's motion seeking reversal of the Commissioner's decision is GRANTED, and the Commissioner's motion to affirm his decision is DENIED. The Commissioner's decision is REVERSED and REMANDED for calculation and award of benefits.

It is So Ordered.