---

1. Kenneth S. Apfel was sworn in as Commissioner of Social Security on September 29, 1997, succeeding Shirley S. Chater, who was originally the named defendant. Pursuant to Fed.R.Civ.P. 25(d)(1), Commissioner Apfel has been substitut-

**Eric RAWLS, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of the Social Security Administration, Defendant.[1]**

**No. CIV. A. 96-30260-MAP.**

United States District Court, D. Massachusetts.

March 23, 1998.

ed as defendant. By operation of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), no further action need be taken to continue this suit.

ORDER

PONSOR, District Judge.

Upon *de novo* review this Report and Recommendation is hereby adopted. The defendant's motion (Dkt. 8) is ALLOWED, in part, as to any SSDI claim. The plaintiff's motion to reverse is DENIED but the motion to remand is ALLOWED for consideration of new, material evidence on the SSI claim. So ordered.

*REPORT AND RECOMMENDATION WITH REGARD TO PLAINTIFF'S MOTION TO REVERSE OR REMAND THE DECISION OF THE COMMISSIONER (Docket No. 07) and DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER (Docket No. 8)*

NEIMAN, United States Magistrate Judge.

This matter is before the court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act which provide for judicial review of a final decision by the Commissioner of Social Security ("Commissioner") regarding an individual's entitlement to disability benefits. Eric Rawls ("Plaintiff") made application for both Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") under the Act. In his complaint, Plaintiff alleges that the Commissioner's decision denying such benefits is not supported by substantial evidence in the record. Accordingly, Plaintiff moves to reverse that decision or, in the alternative, to remand the matter so that the Commissioner may consider evidence that Plaintiff claims is new and material. In turn, the Commissioner has moved for an order affirming his decision. The parties' motions have been referred to the court for a report and recommendation pursuant to Rule 3 of the Rules of the United States Magistrates in the United States District Court for the District of Massachusetts. 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the court recommends that each motion be allowed in part and denied in part.

## I. STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir.1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Thus, even if the administrative record could support multiple conclusions, a court must uphold the decision "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Ortiz v. Secretary of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir.1991) (quoting *Rodriguez*, 647 F.2d at 222). Accordingly, a court must affirm the decision so long as it is supported by substantial evidence, even if the record could arguably justify a different result. *See Rodriguez Pagan v. Secretary of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir.1987). The resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for the doctors or for the courts. *Rodriguez*, 647 F.2d at 222; *Evangelista v. Secretary of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir.1987).

## II. DISABILITY STANDARD

In order to receive SSDI benefits, a claimant must show, among other things, that he

has an insured status and is under a disability. *See* 42 U.S.C. §§ 423(a)(1)(A), (D). A claimant has an "insured status" if he worked for a statutorily defined period of time before applying for benefits. 42 U.S.C. §§ 423(c)(1)(A), (B). In contrast, a claimant need not have an insured status to receive SSI benefits; rather, he must show that he is in need and also under a disability. *See* 42 U.S.C. §§ 1381a, 1382c(a)(3).

For purposes of both SSDI and SSI, "disability" is defined, in applicable part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1). *See also* 42 U.S.C. § 1382c(a)(3)(A). In determining whether a claimant is disabled, the Commissioner must use a five-step sequential analysis. *See Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982). This analysis proceeds on the basis of the following questions:

First, is the claimant currently employed? If he is, then the claimant is automatically considered not disabled.

Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits his or her physical or mental capacity to perform basic work-related functions." If the claimant does not have an impairment of at least this degree of severity, he is automatically considered not disabled.

Third, does the claimant have an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled....

Fourth, does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, then he is not disabled. If so the agency asks the fifth question.

Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled. *Id.* at 6–7 (citing 20 C.F.R. § 404.1520). *See also* 20 C.F.R. § 416.920; *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1120 (1st Cir.1986).

## III. FACTUAL BACKGROUND

Plaintiff was born on December 2, 1959, and was thirty-five years of age at the time of the ALJ's decision. (Administrative Record ("A.R.") 68.) After completing the equivalent of a high school degree and attending trade school, Plaintiff worked for eleven years as a manual laborer. (A.R. 127, 137.) On December 9, 1993, Plaintiff stopped working. (A.R. 109–115.) According to the ALJ, Plaintiff met the special earnings requirements of the Social Security Act, for SSDI purposes, through June 30, 1992. (A.R. 11.)

Beginning in 1992, Plaintiff's history of psychiatric disorders began, encompassing treatment with medication, counseling and a number of hospitalizations. In December of 1992, Plaintiff underwent his first psychiatric hospitalization at Holyoke Hospital following an episode of violent and aggressive behavior. (A.R. 125, 148.) He was diagnosed with manic depression and prescribed Lithium and Klonopin. (A.R. 148, 150.)

On February 9, 1993, Plaintiff began outpatient therapy at River Valley Counseling Center ("RVCC"). He reported that he was seeking counseling because of his earlier hospitalization, feelings of depression, stress due to financial and personal problems, anxiety, hopelessness and despair, and experiences of insomnia, alcohol abuse and destructive behavior. (A.R. 148–51.) Records dated February 10, 1993, indicate that Dr. P.R. Geronimo–Flores observed that Plaintiff was having some difficulty with cognitive and emotional functioning. (A.R. 152–153.) The doctor diagnosed Plaintiff as having a bipolar disorder and alcoholic dependence and recommended both individual therapy and an alcohol rehabilitation program. The doctor maintained Plaintiff on Lithium and Klonopin and prescribed Stelazine as well. Plaintiff began attending monthly therapy sessions which continued through November 16, 1993. (A.R. 148–69.)

In June of 1993, Plaintiff was again hospitalized at Holyoke Hospital and then discharged on June 26, 1993. (A.R. 125, 180.) Outpatient therapy at the RVCC thereafter resumed on July 24, 1993. (A.R. 161.) Plaintiff reported that, although he had been hospitalized and was feeling depressed, he was motivated to support himself and stay sober. (Id.)

From November 29, 1993 through December 8, 1993, Plaintiff was again hospitalized at Holyoke Hospital. (A.R. 170, 184–93.) Upon admission, Plaintiff reported that he had stopped taking his medications and stopped attending his alcohol-abuse support group. In addition, he reported increased alcohol and drug abuse, depression, decreased energy, problems with his cognitive functioning and suicidal ideation. Plaintiff was diagnosed with a bipolar disorder, depression, alcohol dependency and cocaine abuse. He received prescriptions for Lithium, Lopid, Cytomel, Wellbutrin, Depakote and Minocin, and was advised to maintain counselling at RVCC. (A.R. 180–186.)

On December 21, 1993, Plaintiff returned to RVCC for counseling with Dr. Geronimo–Flores, who had not seen him since February of that year. (A.R. 170–71, 214.) Dr. Geronimo–Flores did not observe any significant difficulties in Plaintiff's cognitive, psychomotor or emotional functioning and questioned Plaintiff's sincerity about his difficulties. The doctor prescribed Lithium and advised Plaintiff to maintain individual therapy and his substance abuse program. (A.R. 170–71.) Therapy continued until January, 1994, when Plaintiff reported that he was taking his medications and functioning emotionally, although he continued to resist attending his substance abuse treatment program. (A.R. 172.) On March 4, 1994, Plaintiff again saw Dr. Geronimo–Flores and reported that he was feeling depressed. (A.R. 175.) However, Dr. Geronimo–Flores observed no evidence of clinical depression nor any indication of cognitive, perceptual or psychomotor difficulties. (A.R. 175.)

On June 15, July 12 and September 14, 1994, Plaintiff canceled his counseling appointments, claiming a busy schedule. (A.R. 201, 216, 217.) However, later in September,

Plaintiff reported that he had not taken some of his medications and was experiencing depression. (A.R. 202.) Dr. Geronimo–Flores observed poor concentration and psychomotor agitation. On December 6, 1994, Dr. Geronimo–Flores again saw Plaintiff, who reported some mild anxiety. (A.R. 203–204.) Although the doctor observed that Plaintiff was anxious and had slightly pressured speech, Plaintiff did not exhibit any psychotic symptoms and seemed to be functioning emotionally. (Id.)

In a final January 31, 1995 report, Dr. Geronimo–Flores indicated that Plaintiff was moderately limited in his ability to do cognitive tasks, to perform at a consistent pace, and to cope with ordinary work stress. (A.R. 206.) Dr. Geronimo–Flores concluded that there were no significant limitation in Plaintiff's ability to act appropriately in public and to work with his superiors and others. (Id.)

## IV. PROCEDURAL BACKGROUND

Claiming disabling depression, Plaintiff filed applications for SSDI and SSI on December 13, 1993. (A.R. 65–80.) The Commissioner denied both applications, as well as Plaintiff's subsequent requests for reconsideration. (A.R. 81–88, 92–104.) Plaintiff appealed this decision and a hearing was held before an Administrative Law Judge ("ALJ") on March 21, 1995. In an April 11, 1995 decision, the ALJ denied Plaintiff's claims for both SSDI and SSI. (A.R. 7–20.) Plaintiff appealed and provided the Appeals Council with additional information. (A.R. 237–280.) On November 21, 1996, the Appeals Council denied Plaintiff's request for review and affirmed the ALJ's decision. (A.R. 3–5.) On June 30, 1997, Plaintiff filed the instant action.

Earlier claims to the contrary, Plaintiff informed the court, in his reply to the Commissioner's supplemental memorandum, that he now accepts the ALJ's determination regarding his lack of entitlement to SSDI benefits. (See Docket No. 12 at 1.) Thus, Plaintiff no longer contests the ALJ's determination that he was not disabled for SSDI purposes prior to the expiration of his insured status on June 30, 1992. (A.R. 11). See 42 U.S.C. §§ 423(a)(1)(A), (D). In con-

trast, a claimant need not have an insured status to receive SSI benefits; rather, he must simply show that he is under a disability and in need. *See* 42 U.S.C. §§ 1381a, 1382c(a)(3). Accordingly, the only issue before the court is whether the Commissioner's denial of Plaintiff's claim for SSI benefits should be affirmed, reversed or remanded for reconsideration.

## V. DISCUSSION

As might be expected, the Commissioner maintains that the ALJ's findings are supported by substantial evidence of record and, therefore, should be affirmed. In moving to reverse or, alternatively, to remand the decision of the Commissioner, Plaintiff argues that the ALJ's decision denying his claim for SSI was not supported by substantial evidence. In particular, Plaintiff claims that the ALJ's determination that Plaintiff's bipolar disorder did not meet the Commissioner's list of impairments, (*see* 20 C.F.R. Pt. 404 Appendix 1, Subpart P, Section 12.00), is not supported by substantial evidence. Plaintiff also claims that the ALJ failed to properly consider the full scope of his psychiatric problems and, therefore, wrongfully excluded several of his impairments in the hypothetical questions posed to the vocational expert.

It is apparent to the court that both of Plaintiff's arguments are, in turn, dependent on Plaintiff's third claim in support of his motion, the existence of new and material evidence. Plaintiff appended the following documents to his motion, evidence which the court has numbered 1 through 4:

1. Records concerning Plaintiff's hospitalization at Worcester State Hospital from November 29, 1995 through December 22, 1995, and from July 2, 1996 through July 18, 1996. ("Evidence 1".) These records had been submitted to the Appeals Council as well. (A.R. 237–280.)

2. Records concerning Plaintiff's hospitalization at Providence Hospital from November 19, 1996 through December 6, 1996, and from April 10, 1997 through April 25, 1997. ("Evidence 2".)

3. Progress notes for counseling received by Plaintiff at RVCC from January 19,

1996 through March 25, 1997. ("Evidence 3".)

4. Letter dated June 6, 1997 from Keith Ford, Senior Vocational Rehabilitation Counselor, with attachments. ("Evidence 4".)

These documents were not available to the ALJ and formed no part of his April 11, 1995 decision. Accordingly, the logical starting point for the court's inquiry is whether, standing alone, the proffered evidence calls for a reversal or remand of the ALJ's decision.

■ Plaintiff has the burden of proving that he is entitled to reversal or remand based on evidence that was not considered by the ALJ. In essence, Plaintiff must prove that the evidence is not only new and material, but that he has good cause for his failure to present such evidence to the ALJ. *Evangelista*, 826 F.2d at 139. *See* 42 U.S.C. § 1383(c)(3) (claimant must show that there is "new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding").

■ At the very threshold, Plaintiff fails the *Evangelista* test with respect to both Evidence 4 and Evidence 1. In Evidence 4, the rehabilitation counselor belatedly opines that Plaintiff has been unemployable since 1993. In *Evangelista*, however, the First Circuit specifically held that evidence provided by an expert retained to evaluate a case *after* the administrative law judge has rendered a final decision is inadequate to constitute good cause. *See Evangelista*, 826 F.2d at 139–40. Plaintiff has suggested no reason why his counselor's report should be considered nearly two years after the ALJ's April 11, 1995 decision. Similarly, Evidence 1, regarding Plaintiff's two psychiatric hospitalizations at Worcester State Hospital in late 1995 and mid-year 1996, is not really new. While the evidence was not available to the ALJ, the Appeals Council was aware of the evidence and declined to remand the case for further consideration.

■ With respect to Evidence 2 and 3, however, Plaintiff presents good cause for not providing that information to the Com-

missioner. While *Evangelista* does not explicate the full scope of good cause, other courts have reasonably determined that a claimant has good cause when the evidence did not exist at the time of the initial hearing. *See Tirado v. Bowen,* 705 F.Supp. 179, 181 (S.D.N.Y.1989) (citing *Sears v. Bowen,* 840 F.2d 394, 399 (7th Cir.1988)); *Caulder v. Bowen,* 791 F.2d 872, 878 (11th Cir.1986). Here Evidence 2 and 3, covering hospitalizations and counseling from November 19, 1996 through April 25, 1997, simply did not exist and could not have been presented to the ALJ at the March 21, 1995 hearing.

Given good cause, the court must nevertheless determine whether the proffered evidence is indeed "new." *Evangelista,* 826 F.2d at 139 (citing *Scott v. Califano,* 462 F.Supp. 240, 242 (N.D.Ill.1978)). In making that determination, the First Circuit instructs courts to focus on whether or not the evidence is cumulative. *See Evangelista,* 826 F.2d at 139. *See also Tirado,* 705 F.Supp. at 181 (citing *Szubak v. Secretary of Health & Human Servs.,* 745 F.2d 831, 833 (3d Cir. 1984)). While a court should consider "new *facts* of any relevance" to the administrative law judge's earlier decision, it will not consider evidence that is "cumulative of what already appears in—indeed, comprises the totality of—the record." *Evangelista,* 826 F.2d at 140.

The information proffered via Evidence 2 and 3 is something of a hybrid. It is "new" in the sense that it presents information concerning Plaintiff's hospitalizations and counseling after the ALJ and the Appeals Council rendered their decisions. In addition, Evidence 2 and 3, and for that matter Evidence 1, is also somewhat cumulative, at least with respect to Plaintiff's diagnosis, symptoms and medications. At the time of the hearing, the ALJ was fully aware that Plaintiff was diagnosed with a severe bipolar disorder, petit mal seizures and alcohol abuse. (A.R. 14.) The proffered evidence does not suggest that his diagnosis, medication or symptoms significantly changed. For example, the discharge summary from the Providence Hospital, where Plaintiff was treated from November 19, 1996 to December 6, 1996, reports a diagnosis of bipolar disorder, depression and alcohol abuse. Similarly, the discharge summary for Plaintiff's psychiatric hospitalization from April 10, 1997 to April 24, 1997, indicates a diagnosis of bipolar disorder, depression and dysthmic disorder as well as alcohol and cocaine abuse. After both hospitalizations, Plaintiff was discharged with prescriptions for similar medications. (*See* Evidence 2.) The RVCC progress reports also indicate Plaintiff's treatment for similarly diagnosed symptoms and medications. (*See* Evidence 3.) It is apparent to the court, therefore, that the newly proffered documentation, at least with respect to Plaintiff's diagnoses, symptoms and medications, is similar to and cumulative of underlying facts that were on record at the initial March 21, 1995 hearing before the ALJ.

While the proffered evidence may be somewhat cumulative, it is also non-cumulative and, in the court's view, satisfies the materiality prong of *Evangelista.* Additional evidence is material if the ALJ's decision "might reasonably have been different" were it considered. *Evangelista,* 826 F.2d at 140 (quoting *Falu v. Secretary of Health & Human Servs.,* 703 F.2d 24, 27 (1st Cir.1983)). *See also Tirado,* 705 F.Supp. at 181 (materiality prong is satisfied when the information is relevant to the claimant's condition during the time period for which the benefits were denied) (citing *Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2d Cir.1975))). *See also Chaney v. Schweiker,* 659 F.2d 676, 679 (5th Cir.1981)).

Of course, additional evidence is not material if it is concerned with subsequent deterioration of a later acquired disability or a previously non-disabling condition. *See Tirado,* 705 F.Supp. at 182 ("An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it is not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.") (quoting *Szubak,* 745 F.2d at 833). This appears to be reason why the Appeals Council, in the instant matter, rejected Evidence 1 as a basis for remand. The Appeals Council indicated that

the evidence was not material to Plaintiff's asserted disability at the time of the ALJ hearing. Accordingly, the Appeals Council recommended that, if Plaintiff wished to establish disability based on events arising after the hearing date, he would need to file a new application. (A.R. 4.)

While Plaintiff acknowledges that the newly proffered evidence may point to psychiatric "deterioration", thereby precluding its materiality to the ALJ's decision, Plaintiff also asserts that, together, Evidence 1, 2 and 3 provide support for the chronic nature of his mental impairment as it existed at the time of his hearing. The court agrees. As the Commissioner's regulations require, when determining the issue of disability, chronic mental illness must be viewed longitudinally. *See* 20 C.F.R., Pt. 404 Appendix 1, Subpart P, Section 12.00(E). The Appeals Council did not consider this argument with respect to Evidence 1, despite its having been asserted by Plaintiff's representative at the time. (*See* A.R. 237–38.) Now, Evidence 2 and 3 present even further proof of the chronicity of Plaintiff's condition, evidence which may well have caused the ALJ, had he knowledge of the long term impact of the disease, to issue a different decision. *See Evangelista*, 826 F.2d at 139–40 (a court must consider whether the new evidence would be "meaningful" or "relevan[t]" to the basis of the earlier decision).

When a district court confronts the tension between "the need for finality and the search for the truth" in adjudicating disability claims, "room must be allowed in the process for the fact that a claimant's medical condition may not be fully diagnosed or comprehended at the time of [his] hear-

ing." *Tirado*, 705 F.Supp. at 181 (citation omitted). New evidence of a continuing psychiatric condition, in particular, is material if it suggests that the condition may be severe and chronic. *See Sears*, 840 F.2d at 401. Although the evidence may not have been available at the time of the ALJ's decision, the evidence is clearly material to whether the mental illness was disabling. Thus, even when there is "a timing problem," the evidence can form the basis of remand. *Id.*

## VI. CONCLUSION

Plaintiff has been repeatedly hospitalized and treated for his bipolar disorder through medication and counseling since the ALJ's denial of his benefits. While it is not the role of the court to decide if this new evidence indicates that Plaintiff has a disabling condition in fact, the court concludes that the evidence is sufficiently material to form a basis for remand with respect to Plaintiff's SSI eligibility. Again, Plaintiff concedes the Commissioner's motion with respect to his SSDI application, for which eligibility had to have been shown prior to June 30, 1992. Accordingly, the court recommends that the Commissioner's motion be ALLOWED with respect to Plaintiff's SSDI eligibility, but otherwise DENIED. In addition, the court recommends that Plaintiff's motion be ALLOWED with respect to his request for remand of his SSI application, but otherwise DENIED.[2]

**2.** The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within ten (10) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of

Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.