**Pedro MONTALVO, Plaintiff,**

v.

**Jo Anne BARNHART, Commissioner of Social Security, Defendant.**

No. CIV.A.02–30058–KPN.

United States District Court,
D. Massachusetts.

Jan. 16, 2003.

Richard C. Roth, Springfield, MA, for plaintiff.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for defendant.

*MEMORANDUM AND ORDER WITH REGARD TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS and DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER*
*(Docket Nos. 10 and 11)*

NEIMAN, United States Magistrate Judge.

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner"). *See* 42 U.S.C. § 405(g). Pedro Montalvo ("Plaintiff") alleges that the Commissioner's decision denying him Supplemental Security Income ("SSI") disability benefits—which is memorialized in a January 22, 1999 decision by an administrative law judge—is flawed by various errors of law. Plaintiff, via a motion for judgment on the pleadings, has moved to reverse or, in the alternative, to remand the decision, and the Commissioner, in turn, has moved to affirm.

The parties have consented to the jurisdiction of this court pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73(b). For the reasons set forth below, the court will deny the Commissioner's motion and will allow Plaintiff's motion to the extent it seeks a remand.

## I. *STANDARD OF REVIEW*

■ The Commissioner's factual findings in making her disability determination are conclusive so long as they are grounded in substantial evidence. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is "such relevant evidence as a rea-

sonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). It is "more than a mere scintilla." *Id.* Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion." *Irlanda Ortiz v. Sec'y of Health & Human Servs.,* 955 F.2d 765, 769 (1st Cir.1991) (citation and internal quotation marks omitted).

■ Even so, a denial of disability benefits need not be upheld if there has been an error of fact or law in the evaluation of the particular claim. *See Manso–Pizarro v. Sec'y of Health & Human Servs.,* 76 F.3d 15, 16 (1st Cir.1996). In the end, the court maintains the power, in appropriate circumstances, "to enter ... a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand[ ] the cause for a rehearing." 42 U.S.C. § 405(g).

## II. *BACKGROUND*

Plaintiff was born on December 30, 1961, has a sixth grade education and no relevant work history. (Administrative Record ("A.R.") at 113, 124, 149; Supplemental Transcript ("Supp.Tr.") at 6.) He was born in Puerto Rico and came to the United States at about age thirteen. (A.R. at 202.) Since that time, and until 1996, Plaintiff was a heavy drug user (including intravenous cocaine and heroin) and he spent four years in jail in the mid–1990s. (*Id.*) Plaintiff is literate in Spanish but does not understand English. (Supp. Tr. at 6.)

### A. *Medical History*

Plaintiff claims a disability due to chronic hepatitis infection, a condition he claims

to have had since December 1, 1996. (See A.R. at 30–31, 113.) He also claims to have a mental impairment. (See A.R. at 21–22.)

### 1. *Hepatitis*

Plaintiff tested positive for Hepatitis C in April of 1997. (A.R. at 196.) Thereafter, from January through March of 1998, he was treated for hepatitis at the emergency room and ambulatory clinic at St. Barnabas Hospital (A.R. at 134–48.)

Dr. Michael Polak, an internist, examined Plaintiff in February of 1998 and noted that he was not undergoing Interferon treatment or treatment for end-stage liver disease. (A.R. at 149–55.) The physical examination showed that Plaintiff was well-developed, well-nourished and in no acute distress. (A.R. at 149.) He could ambulate without difficulty and his gait was within normal limits. (*Id.*) Dr. Polak also observed that Plaintiff's head, eyes, ears, nose, throat, neck and cardiovascular system were normal and that Plaintiff had no difficulty rising from a chair or getting off the examination table. (A.R. at 149–50.) Dr. Polak diagnosed a history of Hepatitis C exposure (with the extent of underlying liver disease unclear), alcohol abuse and multiple substance abuse and concluded that Plaintiff was mildly impaired in relation to carrying, lifting, pushing, pulling, walking and standing. (A.R. at 150–51.)

On May 8, 1998, Dr. C. Levit of the New York State Disability Determination Service ("DDS") reviewed Plaintiff's file for the Commissioner. (A.R. at 188–95.) Dr. Levit advised that, due to the hepatitis, Plaintiff would be limited to frequent lifting over ten pounds and only occasional lifting of over twenty pounds. (A.R. at 189.)

As a result of Plaintiff's request, an administrative law judge obtained other medical records. (Supp. Tr. at 2, 7.) They show that Plaintiff began treating with Dr. Ronald Loescher in June of 1998. (A.R. at 202–04.) Plaintiff was not taking medication for liver disease at the time, but testing confirmed Hepatitis B and C for which a healthy diet, regular exercise and abstinence from drugs and alcohol were recommended. (A.R. at 206, 208.) A liver biopsy in October of 1998 was positive for moderate chronic active viral hepatitis with cirrhosis. (A.R. at 200.) Interferon treatment was being considered in December of 1998. (A.R. at 211.)

### 2. *Mental Impairment*

A neurological examination performed by Dr. Polak in February of 1998 showed that Plaintiff was alert and oriented in all spheres. (A.R. at 150–51.) On March 9, 1998, DDS determined that Plaintiff need not be referred for a psychological examination because the physical examination showed that no psychiatric problems were evident or alleged. (A.R. at 166.) Dr. Loescher's notes of October 5, 1998, indicate that Plaintiff complained about his weight and that he was fatigued, nervous and depressed. (A.R. at 208.) Plaintiff wondered if he should see a counselor. (*Id.*) Dr. Loescher explained, however, that the symptoms described were quite common with chronic illness and advised Plaintiff that he eat healthy foods and avoid alcohol, drugs and smoking. (*Id.*)

### B. *Procedural History*

On December 8, 1997, in the midst of these medical benchmarks, Plaintiff filed an application for SSI disability benefits. (A.R. at 113–14.) After his claim was denied on March 13, 1998, Plaintiff requested reconsideration but was again denied on May 21, 1998. (A.R. at 90–97.) Proceeding *pro se*, Plaintiff requested a hearing before an administrative law judge

("ALJ"). (A.R. at 98.) The hearing was held on October 13, 1998, at which time a Spanish interpreter was provided. (Supp. Tr. at 1, 5.) The ALJ denied Plaintiff's claim in a decision dated January 22, 1999. (A.R. at 32–45.) On March 9, 1999, Plaintiff requested review of the decision by the Appeals Council. (A.R. at 30–31.)

On December 16, 1999, Plaintiff retained his present lawyer. (Complaint ¶ 5.) On January 14, 2000, with the assistance of counsel, Plaintiff filed a new claim for SSI benefits, but did not withdraw the request for review then pending in the Appeals Council. (A.R. at 23–26.) His new claim was approved on or about February 23, 2000, apparently on the basis of mental illness, the Commissioner finding as well that Plaintiff was incapable of managing his finances and needed a representative payee. (See A.R. at 14–29.) Plaintiff's file with respect to this newly approved claim was forwarded to the Appeals Council. (See *id.*)

On January 30, 2002, the Appeals Council denied Plaintiff's request for review. (A.R. at 5–6.) Plaintiff then filed this action which, in essence, seeks SSI benefits for the period of time between his first, unsuccessful, application and his second, successful one. In due course, the parties submitted the cross motions presently before the court.

## III. *DISCUSSION*

An individual is entitled to SSI benefits if, among other things, he is needy and disabled. *See* 42 U.S.C. §§ 1381a and 1382c(a)(3). Plaintiff's financial need is not challenged. The question here is whether Plaintiff suffers from a disability.

## A. *DISABILITY STANDARD AND THE ALJ'S DECISION*

The Social Security Act (the "Act") defines disability, in part, as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual is considered disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). *See generally Bowen v. Yuckert,* 482 U.S. 137, 146–49, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

In determining disability, the Commissioner follows a familiar five-step protocol. The First Circuit has described the mandatory sequential inquiry as follows:

First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.

Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits the claimants physical or mental capacity to perform basic work-related functions." If he does not have an impairment of at least this degree of severity, he is automatically considered not disabled.

Third, does the claimant have an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.

. . . .

Fourth, . . . . does the claimant's impairment prevent him from performing work of the sort he has done in the past? If

not, he is not disabled. If so, the agency asks the fifth question.

Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6–7 (1st Cir.1982).

In the instant case, the ALJ found as follows with respect to these five questions: that Plaintiff had never engaged in substantial gainful activity (question one); that Plaintiff's "Hepatitis C" and "substance addiction disorder" were "severe" impairments, although not severe enough to be listed in Appendix 1 (questions two and three); that Plaintiff has no history of past relevant work (question four); and that Plaintiff was able to perform certain "medium" work in the national economy (question five). (A.R. at 41–42.) As a result, the ALJ concluded that Plaintiff does not suffer from a "disability."

## B. *ANALYSIS OF PLAINTIFF'S CHALLENGE*

Plaintiff challenges the decision denying him benefits in essentially three ways. First, Plaintiff asserts that the ALJ failed to adequately develop the record with respect to his claim of mental impairment. Second, Plaintiff asserts that the Appeals Council, faced with the fact that his second application for SSI had been approved based on a mental impairment, failed to vacate the ALJ's decision and order a new hearing to establish its onset date. Third, Plaintiff claims that he did not make an informed waiver of his right to legal representation and, therefore, was denied due process.

The first two arguments can be addressed and set aside with relative speed. The third argument, however, contains within its boundaries the reason upon which the court will order a remand, namely, the ALJ's failure to fulfill his heightened duty to Plaintiff as a pro se claimant.

### 1. *Development of the Record with Respect to Mental Illness*

Plaintiff first contends that the ALJ abrogated his duty to develop Plaintiff's claim of mental impairment. Unfortunately for Plaintiff, the record before the ALJ contained no specific claim of mental impairment and made little, if any, reference to Plaintiff's mental anxiety. To be sure, when Plaintiff requested reconsideration of the initial denial of his SSI application, he mentioned that, in addition to his physical problems, he felt "anxious and depressed." (A.R. at 94; see also *id.* at 127 ("Reconsideration Disability Report" in which Plaintiff stated, "I suffer from anxiety and depression").) Nonetheless, it is clear that, even with this somewhat offhand reference to anxiety, the record before the ALJ presented a claim of physical, not mental, disability based on Plaintiff's chronic hepatitis. Indeed, at the hearing before the ALJ, Plaintiff himself made no mention of a mental impairment affecting either his ability to work or engage in the daily activities of living and there is no other evidence that he had an "obvious" mental impairment. *Compare Deblois v. Sec'y of Health and & Human Servs.*, 686 F.2d 76, 81 (1st Cir.1982).

▉ In short, the court rejects Plaintiff's initial argument that his mental impairment was so obvious that, based on that fact alone, the ALJ had a duty to more fully develop the record. In the court's estimation, the ALJ could appropriately assume that Plaintiff was pursuing a claim based only on a physical impairment.

### 2. *Appeals Council's Actions*

Plaintiff next asserts that the Appeals Council abused its discretion in not vacat-

ing the ALJ's decision and remanding Plaintiff's case for rehearing. In essence, Plaintiff argues that, after the Appeals Council received documentation of the approval of his second claim for SSI benefits based on a mental disability, the issue was no longer whether he was disabled, but when he became disabled, i.e., the onset date.

 Under applicable regulations, the Appeals Council may grant a request for review in circumstances where: (1) there appears to be an abuse of discretion by the administrative law judge; (2) there is an error of law; (3) the administrative law judge's action, findings, or conclusions are not supported by substantial evidence; or (4) there is a broad policy or procedural issue which may affect the general public interest. 20 C.F.R. § 416.1470 (2002). While additional material evidence may be submitted to the Appeals Council, a claimant requesting review must have good cause for not having presented such evidence to the ALJ. *See Rawls v. Apfel,* 998 F.Supp. 70, 75 (D.Mass.1998) (citations omitted). It is also "well established" that a discretionary decision by the Appeals Council is "reviewable to the extent that it rests on an explicit mistake of law or other egregious error." *Mills v. Apfel,* 244 F.3d 1, 5 (1st Cir.2001) (citing *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957)), *cert. denied,* 122 S.Ct. 822 (2002).

 Plaintiff has failed to establish either an explicit mistake of law or other egregious error on the part of the Appeals Council. As described, Plaintiff supplied the ALJ with no real claim or evidence that he was unable to work because of a mental impairment. Therefore, the evidence of mental impairment which Plaintiff later presented to the Appeals Council cannot be said to have been "material" to the initial claim rejected by the ALJ. Accordingly, the Appeals Council's decision to deny review cannot be deemed to have been erroneous, let alone "egregiously" so.

3. *ALJ'S Heightened Duty Because Plaintiff Appeared Pro Se*

As a final matter, Plaintiff argues that, as a pro se claimant, he was denied due process of law because he did not receive complete information about his rights. In particular, Plaintiff asserts, he did not make an informed waiver of his right to legal representation. Although the court does not completely agree with Plaintiff's assessment, it does believe that infirmities with the administrative hearing justify a remand.

Were the court to look simply at the formal process by which Plaintiff was advised of his rights and, thereafter, waived legal representation, it would be hard pressed to conclude that he was denied the due process of law. As the Commissioner asserts, Plaintiff received notice in both English and Spanish of his right to representation, as well as a list of potential legal representatives. (A.R. at 99–104.) While the ALJ, at the hearing, did not physically hand Plaintiff a compilation of services or explain contingency fee representation—as Plaintiff argues he should have—Plaintiff was sent this information by mail. (A.R. at 99.) Moreover, at the commencement of the hearing, Plaintiff stated that he received the notices, understood his right to representation and decided to proceed alone.[1] At bottom, therefore, the court is

---

1. The hearing began with the following colloquy:

ALJ: All right. Mr. Montalvo, I'm Judge Mackay, and I[sic] been assigned to review the decision made by the Social Security Administration denying your application. I'll emphasize that I am independent of the Social Security Administration. The fact that they made the decision they did does not influence my decision. Prior to the

not prepared to impose upon this and other administrative law judges the stringent requirements suggested by Plaintiff and utilized by courts in some other jurisdictions with respect to pro se litigants. *See Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir.1991); *Smith v. Schweiker*, 677 F.2d 826, 828–29 (11th Cir.1982); *Frank v. Chater*, 924 F.Supp. 416, 423–24 (E.D.N.Y. 1996).

Nonetheless, the court concludes, based on standards established by the First Circuit in *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136 (1st Cir.1987), that the ALJ failed to adequately discharge his heightened duty to this pro se claimant. While the ALJ may have adequately informed Plaintiff of his right to legal representation and while, as indicated, Plaintiff's mental impairment was not obvious, there is no doubt that Plaintiff's hearing, as further described below, was marked by sufficient unfairness due to lack of counsel and that a remand is appropriate.

 The First Circuit has "long recognized that social security proceedings are not strictly adversarial." *Evangelista*, 826 F.2d at 142 (citation and internal quotation marks omitted). Accordingly, the court has "made few bones about [its] insistence that the [Commissioner] bear a responsibility for adequate development of the record ... and this responsibility increases when the applicant is bereft of counsel." *Id.* (citations omitted). Of course, the absence of counsel, without

"something extra," creates no basis for remand. *Id.* Still, a "remand for want of representation 'is necessitated ... where there is a showing of unfairness, prejudice or procedural hurdles insurmountable by laymen.'" *Id.* (quoting *Teal v. Mathews*, 425 F.Supp. 474, 480 (D.Md.1976)).

Similar sentiments were recently echoed by the Supreme Court in *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). "Social Security proceedings," the Supreme Court stated, "are inquisitorial, rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Id.* at 110–11, 120 S.Ct. 2080. *See also Currier v. Sec'y of Health, Educ. & Welfare*, 612 F.2d 594, 598 (1st Cir.1980); *Deblois*, 686 F.2d at 81; *Dillard v. Massanari*, 190 F.Supp.2d 242, 246 (D.Mass.2002) (citing *Heggarty v. Sullivan*, 947 F.2d 990, 997 (1st Cir.1991)).

The "something extra" needed for remand, as required by *Evangelista*, obviously varies from case to case. For example, in both *Deblois* and *Currier*, the First Circuit opined that the Commissioner "has certain responsibilities with regard to the development of the evidence" and that these responsibilities "increase" in a number of circumstances: "[ (1) ]where the appellant is unrepresented, [ (2) ] where the claim itself seems on its face to be substantial, [ (3) ] where there are gaps in the evidence necessary to a reasoned evaluation of the claim, and [(4)] where it is within the power of the [ALJ], without

hearing, I reviewed the written evidence. I will take that into account, along with testimony I receive (INAUDIBLE). After the hearing is over, I will make my decision, put it in writing, and send a copy to you. Now, the notices that you received explained you have the right to be represented at this hearing. Do you understand that right?
CLMT: Yes.

ALJ: And since you are here without representation, I take it you have decided to proceed without it, am I correct in that?
CLMT: Yes.
ALJ: All right. That is perfectly within your right, and as we're going forward, if there is any question you have, please stop me and let me know. I'll be happy to explain precisely what's going on.
(Supp. Tr. at 1–2.)

undue effort, to see that the gaps are somewhat filled." *Deblois*, 686 F.2d at 80 (observing that the responsibilities are "even greater when the claimant is obviously mentally impaired"). *Accord Currier*, 612 F.2d at 598 (overturning administrative law judge's reliance on "skimpy evidence" presented by "uncounselled and mentally impaired" claimant).

■■■■ Relatedly, an administrative hearing should be long enough so as to adequately protect a claimant's due process rights. *See Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir.1994) (remanding claim where, inter alia, the hearing lasted only ten minutes and was fully transcribed in eleven pages); *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1052 (6th Cir.1983) (administrative law judge did not fulfill his responsibilities where the hearing "lasted a mere 25 minutes, and was fully transcribed in approximately 11 pages"); *Meyer v. Schweiker*, 549 F.Supp. 1242, (W.D.N.Y.1982) (deeming twenty-three minute hearing to be inadequate). *See also Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir.1993) (noting that while a hearing's length is not dispositive, it is a consideration). The claimant's educational background, physical health and comfort with the English language ought to be considered as well. *See Battles*, 36 F.3d at 45.

■■■■ Here, a number of factors converged so as to make the administrative hearing a due process minefield: Plaintiff had a limited education, appeared pro se, needed a translator, testified to memory problems, had ill health and may have had mental infirmities—albeit ones that were not obvious at the time. Despite these problems, the hearing lasted, at most, twenty-two minutes, spanning a mere elev-

en transcript pages.[2] Most problematically, the ALJ, in the court's estimation, was insufficiently forthcoming during the proceeding with respect to a fundamental element of the case, Plaintiff's residual functional capacity, as to enable Plaintiff to present his position fairly and adequately.

In his post-hearing decision, the ALJ claims that he "called upon the vocational expert to name jobs [Plaintiff] is able to perform given his particular residual functional capacity." (A.R. at 41.) The ALJ's decision then describes the following: "The [vocational] expert ... was asked to take into account [Plaintiff]'s age, educational background, and employment history. The vocational expert testified that assuming [Plaintiff]'s specific work restrictions, he is capable of making a vocational adjustment to perform the full range of work at the medium level of exertion." (*Id.*)

Regrettably, the ALJ's description of the hearing and the vocational expert's role therein is simply not true. Nowhere did the ALJ ask the vocational expert to name jobs Plaintiff could do in the manner described and at no time did the vocational expert testify that Plaintiff was capable of performing the full range of work at the medium level of exertion. Quite to the contrary, the ALJ indicated on the record that he did *not* need to solicit the vocational expert's opinion with respect to any assessment of Plaintiff's ability to perform medium-level work because, as the ALJ himself claimed during the hearing, "there is in the file an assessment that says that [Plaintiff] can perform the full range of medium-level work." (Supp. Tr. at 10.) Thus, it was the ALJ, not the vocational expert, who had concluded that Plaintiff

---

**2.** The twenty-two minute estimate may be generous insofar as it comes from the ALJ's own calculation. (See Supp. Tr. at 1, 11.) By contrast, the stenographer certified that the hearing was only twelve minutes long. (See *id.*)

could perform medium-level work. Simply stated, the ALJ's description of the vocational expert's "testimony" is made up out of whole cloth.[3]

What the ALJ *did* ask the vocational expert was whether, "assuming that everything Plaintiff said in his testimony is completely credible[,][a]re you aware of any unskilled occupations that he would be able to perform?" (Supp. Tr. at 10.) The vocational expert's answer to that question was "no." (*Id.*) The ALJ continued his questioning:

Q. And that's because of his description of the pain that he experiences, the fatigue, need to take frequent rests, and so on, am I correct?

A. Yes, the way the pain incapacitates him, as he says, his activities of daily living.

(*Id.*) *That,* in sum and substance, was the testimony of the vocational expert. And, it was this testimony, it appears, that the ALJ later deemed "[un]necessary to consider in further detail." (A.R. at 41.)

Perhaps, the ALJ was confused about the testimony he was considering. There is a hearing transcript included in the administrative record which concerns a completely different claimant. (See A.R. at 46–83.)` Alternatively, perhaps, the ALJ was using boilerplate language when he drafted his decision. Whatever the case, it appears that the ALJ took an adversarial posture during the most critical part of the hearing. There is no way that Plaintiff could have understood at the time that the ALJ was *not* going to rely on the vocational expert's testimony—which, after all, was favorable to Plaintiff—but would ignore that testimony because he had concluded, without a hint of notice to Plaintiff, that Plaintiff's testimony was not credible. For the ALJ to then ask Plaintiff whether he wished to cross-examine the vocational expert, (Supp. Tr. at 10–11), was a useless exercise. Plaintiff, a pro se claimant, would have no reason to cross examine an expert who had just testified that he would not be able to engage in *any* unskilled work.

In a way, this case is not unlike *Bluvband v. Heckler,* 730 F.2d 886 (2nd Cir. 1984). There, the court held that where "the claimant is handicapped by lack of counsel, ill health, and inability to speak English well," the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts ... and the reviewing court has a duty to make a searching investigation of the record to make certain that the claimant's rights have been protected." *Id.* at 892 (citations and internal quotation marks omitted). Put bluntly, an administrative law judge may not engage in gamesmanship with a pro se claimant or treat him as an adversary. *See id.* (citations omitted).

In short, the administrative hearing at issue here was marked by the kind of unfairness and insurmountable hurdles contemplated by the First Circuit. *See Evangelista,* 826 F.2d at 142; *Ramirez v. Sec'y of Health, Educ. & Welfare,* 528 F.2d 902, 903 (1st Cir.1976) (observing that

---

**3.** Even the ALJ's conclusion that Plaintiff could perform "medium" work is suspect. To be sure, the administrative record includes a residual functional capacity assessment dated March 11, 1998, which states that Plaintiff could occasionally lift fifty pounds and frequently lift or carry twenty-five pounds. (A.R. at 168.) *See* 20 C.F.R. § 404.1567(c) (2002) (stating that "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds"). But another such assessment, Dr. Levit's May 8, 1998 analysis, states that Plaintiff could only occasionally lift twenty pounds and frequently lift or carry ten pounds (A.R. at 189), i.e., he could only perform "light" work, *see* 20 C.F.R. § 404.1567(b) (2002).

right to counsel voluntarily waived may furnish grounds for disturbing denial of benefits where claimant was "misled" or the hearing was "unfair"). A remand is necessary so these inequities may be remedied.

## IV. *CONCLUSION*

For the reasons stated, the Commissioner's motion is DENIED and Plaintiff's motion is ALLOWED, but only to the extent it seeks remand.

IT IS SO ORDERED.